**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

COSETTE WILKIE,
<u>Plaintiff-Appellant,</u>

v.

BOARD OF COMMISSIONERS OF
CHATHAM COUNTY,

No. 99-1898

<u>Defendant-Appellee,</u>

and

BEN SHIVAR; ROD TIDY, in their
official and individual capacities,
<u>Defendants.</u>

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., District Judge.
(CA-94-463-1)

Argued: February 28, 2000

Decided: April 19, 2000

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and James R. SPENCER, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Keith Black, FORMAN, MARTH, BLACK &
IDDINGS, P.A., Greensboro, North Carolina, for Appellant. James

Redfern Morgan, Jr., WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Paul E. Marth, FORMAN, MARTH, BLACK & IDDINGS, P.A., Greensboro, North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Cosette Wilkie filed a sex discrimination suit against Chatham County and two of its officers after she was fired from her job as an emergency dispatcher. She alleged that the county discriminated against her by terminating her for conduct it deemed deliberate while merely reprimanding a male employee for conduct it deemed negligent. After a jury verdict in Wilkie's favor, the district court granted judgment as a matter of law to the county. Because Wilkie's claim is supported by nothing more than speculation, we affirm the judgment of the district court.

I.

Cosette Wilkie was employed as a dispatcher in Chatham County's Emergency Services Department. Her primary responsibilities were to receive incoming calls, dispatch the proper personnel and equipment, and maintain contact with emergency units.

The Chatham County personnel ordinance establishes the circumstances under which an employee may be terminated, suspended, or disciplined. Article VII, section 8 provides that an employee may be suspended, demoted, or dismissed for unsatisfactory work performance only after receiving two oral warnings and one written warning. Article VII, section 9 prescribes the penalties for more egregious behavior. Specifically, section 9 provides that an employee may be

2

suspended, demoted, or dismissed without any prior warning "for causes relating to personal conduct detrimental to county service." Subsection (h) of that provision establishes that"willful acts that would endanger the lives and property of others" are one form of misconduct that may trigger section 9 discipline.

The incident that led to Wilkie's termination occurred in the early morning of November 11, 1992. At that time, Wilkie was working the night shift in the communications office with co-dispatcher Henry Smith. The crux of the incident is that Smith was sleeping while Wilkie was on break, and several radio calls to the communications office consequently went unanswered. After an investigation, Emergency Services Director Rod Tidy concluded that Smith was the victim of a "set-up" engineered by Wilkie. According to Tidy, Wilkie deliberately left her post and refused to answer radio calls while Smith was sleeping in an effort to expose Smith for sleeping on the job. Tidy believed that Wilkie thereby willfully endangered the lives and property of the people of Chatham County. He suspended her without pay and recommended to County Manager Ben Shivar that she be terminated. Tidy found that Smith, on the other hand, had been merely negligent in falling asleep. Smith therefore received a written reprimand in accordance with article VII, section 8 of the personnel ordinance.

Shivar then conducted his own investigation of the matter. Among other things, he reviewed the transcript of the radio and phone traffic during the incident and interviewed many of the individuals involved, including Wilkie herself. Shivar concluded that Wilkie intentionally left her post with the knowledge that incoming radio calls could not be answered. Shivar then terminated Wilkie in accordance with article VII, section 9 of the personnel ordinance. Shivar also concluded that Smith's conduct had been merely negligent. In doing so, Shivar noted that there was an unwritten policy among dispatchers that they could sleep so long as a fellow dispatcher was alert and on duty. He also observed that Smith had taken medication to control his allergies before the incident and that this medication could induce drowsiness.

Wilkie appealed her termination to the Board of Commissioners of Chatham County. The Board upheld her dismissal. Wilkie then filed suit against the Board of Commissioners of Chatham County, Shivar, and Tidy in August 1994. She alleged that defendants discriminated

3

against her because of her sex in violation of Title VII and 42 U.S.C. § 1983. She also asserted several state law claims.

Following discovery, defendants moved for summary judgment. The district court granted this motion as to the state law claims and the Title VII claims against Shivar and Tidy, but denied summary judgment on Wilkie's other federal claims. The case proceeded to a jury trial. Defendants moved for judgment as a matter of law after Wilkie's evidence had been presented and again after all the evidence had been presented. Both motions were denied. Before the case was submitted to the jury, Wilkie voluntarily dismissed the individual defendants.

The jury found for Wilkie on both the Title VII and the § 1983 claims and awarded her $40,000 in damages. The county subsequently renewed its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). The district court granted the motion and dismissed Wilkie's claims with prejudice. The court found that the evidence presented by Wilkie was legally insufficient because it could support only speculation that she was terminated because of her sex. Wilkie now appeals.

II.

At trial, Wilkie's claims were subject to the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. Because this case has been fully tried on the merits, we now need only consider "the ultimate question of discrimination vel non." United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-14 (1983). Judgment as a matter of law on this question is appropriate unless Wilkie has established a "legally sufficient evidentiary basis for a reasonable jury to find for [her]." Fed. R. Civ. P. 50(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) ("[T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict."). We thus ask whether Wilkie has produced evidence that can reasonably support a finding that the county intentionally discriminated against her. See Aikens, 460 U.S. at 715.

We conclude that she has not. Viewing the evidence in the light most favorable to her, Wilkie has offered nothing more than unbridled

speculation. Her discrimination claims rest essentially on the unremarkable facts that Wilkie, a female employee, was terminated while Smith, a male employee, was only reprimanded. She provides no evidence, however, that there was any causal relationship between her sex and the county's decision to terminate her. Rather, she seeks to obscure the most fundamental difference between her and Smith -- namely, the fact that after two investigations the county found that Wilkie's misconduct was deliberate while Smith's behavior was merely negligent. Indeed, the county's personnel ordinance prescribes different penalties for these two different types of conduct. This difference is the county's stated reason for its actions, and Wilkie has produced no evidence that could reasonably lead to an inference of an impermissible motive. Her mere speculation that discriminatory animus lurked somewhere beneath the county's decisions simply cannot support a finding of intentional discrimination. See, e.g., Williams v. Cerberonics, Inc., 871 F.2d 452, 458 (4th Cir. 1989); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 242 (4th Cir. 1982).

Wilkie has thus failed to make a legally adequate showing that she was treated differently because of her sex. Although Wilkie may disagree with the county's findings or the fairness of its actions, she cannot now contest them in this forum. For it is well settled that "it is not our province to decide whether the [county's] reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted). We thus decline Wilkie's invitation to second guess the county's personnel decisions.

III.

The essence of Title VII's prohibition of sex discrimination is that "similarly situated employees are not to be treated differently solely because they differ with respect to" their sex. Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 71 (1977). Here Wilkie and Smith were not similarly situated employees. Rather, they were differently situated with respect to their conduct during the incident in question. It was the county's judgment that Wilkie's conduct was deliberate and thus warranted termination pursuant to the county personnel ordinance. Likewise, it was the county's judgment that Smith's conduct

5

was negligent and thus merited only a reprimand under the same ordinance. It is not for the courts to disturb these judgments. <u>See Jiminez v. Mary Washington College</u>, 57 F.3d 369, 377 (4th Cir. 1995). Rather, in the absence of legally sufficient evidence of sex discrimination, the district court properly awarded judgment as a matter of law. The judgment of the district court is accordingly

<u>AFFIRMED</u>.