**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ALVIN EUGENE COATES,
<u>Plaintiff-Appellant,</u>

v.                                                                                                    No. 99-1028

VIRGINIA POWER COMPANY,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-488-A)

Argued: March 1, 2000

Decided: May 2, 2000

Before MICHAEL, Circuit Judge, G. Ross ANDERSON, Jr.,
United States District Judge for the District of South Carolina,
sitting by designation, and James H. MICHAEL, Jr., Senior United
States District Judge for the Western District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam decision.

_____

**COUNSEL**

**ARGUED:** David H. Shapiro, SWICK & SHAPIRO, P.C., Washing-
ton, D.C., for Appellant. Donald Lester Creach, HUNTON & WIL-
LIAMS, Richmond, Virginia, for Appellee. **ON BRIEF:** Robert A.
Swick, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant.

Hill B. Wellford, Jr., HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Alvin Eugene Coates appeals from the granting of summary judgment for Virginia Power Company (Virginia Power). The district court held that Coates failed to present evidence sufficient to support his racial discrimination claim under 42 U.S.C.A. § 1981 (West 1994). Because Coates only presents speculative assertions supporting his claim that Virginia Power's reason for dismissal is pretextual, we affirm the district court's decision.

I.

Alvin Eugene Coates is an African-American man who worked for twenty-four years with Virginia Power. Coates began working with Virginia Power in 1973 at an entry-level position. Until his dismissal in 1997, Coates received several promotions, culminating in his highest appointment with Virginia Power in 1994 as the Supervisor Construction (Overhead) in Virginia Power's Construction Department for the Woodbridge District. As a Supervisor for the Woodbridge District, Coates worked under the supervision of Marty Travis, a Caucasian manager who served as Director of the Woodbridge District's Construction Department. Coates claims he experienced racial animosity from Travis and had suspected him of being racially biased before working for him. Coates claims his promotion to Supervisor led to a series of events which resulted in his dismissal for discriminatory reasons.

In 1997 Virginia Power undertook a company-wide restructuring program known as Vision 2000. The restructuring eventually led to

2

the elimination of many supervisory positions. In May 1997, more than twenty Virginia Power managers, including Travis, met in Richmond to select the supervisors who would be employed under the Vision 2000 plan. As the existing supervisors outnumbered the supervisory slots available, Virginia Power terminated some supervisors after the evaluation process, including Coates. The managers selected two whites and one African-American to work as supervisors in the Woodbridge District after the restructuring process. Also, Travis selected one African-American supervisor to work with him.

Coates believes Travis knew the organizational changes were on the horizon and took affirmative discriminatory steps to ensure that Coates would not have a position with Virginia Power upon completion of Vision 2000. Employees at Virginia Power are rated on a regular basis. These ratings test the employees' knowledge, skills, and abilities, hence they are known as KSAs. Coates claims that after his promotion to Supervisor he unfairly received a significantly lower KSA rating for 1994 compared to his ratings in previous years. However, Coates claims by 1995 he again was rated among the highest of his peers. Additionally, on March 18, 1997, Coates asserts that Travis altered Coates's 1996 KSA to a negative assessment from a positive assessment in an effort to diminish the likelihood that Coates would work with Virginia Power after the Vision 2000 restructuring process. Coates further alleges that Ed Bushee, Coates's immediate supervisor, submitted KSA ratings which were significantly more negative than the KSAs Bushee had prepared for Coates in the past to curry favor with Travis during the Vision 2000 restructuring process.

Coates filed a complaint in the United States District Court for the Eastern District of Virginia, alleging discrimination and retaliation* on the basis of race under the Civil Rights Act of 1991, 42 U.S.C.A. § 1981. The district court granted summary judgment on December 22, 1998. Coates asserts on appeal that he produced sufficient evidence to raise a material issue of fact with respect to whether Virginia Power's proffered reason for Coates's termination was a pretext to unlawful discrimination.

_____

*Coates's complaint initially contained two claims. However, in response to Virginia Power's motion for summary judgment, Coates asked the district court to "drop" the retaliation claim.

3

II.

The court reviews a grant of summary judgment de novo. See Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995). Because the district court dismissed Coates's claim on Virginia Power's motion for summary judgment, we view the evidence in the light most favorable to him. See Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 768 (4th Cir. 1997). Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion." McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991).

III.

When a plaintiff presents a claim for employment discrimination with no direct evidence of discriminatory conduct, the case is "subject to the burden-shifting scheme of McDonnell Douglas." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). McDonnell Douglas requires a plaintiff to make a prima facie case of employment discrimination, which then shifts the burden of production to the employer to proffer some legitimate, nondiscriminatory reason for its action. See id. To establish a prima facie case of discrimination, a plaintiff must prove: (1) he is in a protected group; (2) he was discharged; (3) at the time of his discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) this discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. See McDonnell Douglas, 411 U.S. at 802; Halperin v. Abacus Tech. Corp., 128 F.3d 191, 201 (4th Cir. 1997). The burden of establishing a prima facie case of discrimination is not an onerous one for the plaintiff. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

4

If the plaintiff can establish a prima facie case and the defendant then articulates a legitimate, non-discriminatory explanation for its action, the presumption created by the prima facie case "drops from the case," and the plaintiff bears the ultimate burden to prove that the defendant's proffered reason is pretextual and that the defendant intentionally discriminated against the plaintiff. See Halperin, 128 F.3d at 201. However, the plaintiff "cannot `prevail on the ultimate issue merely by demonstrating that the defendant's proffered explanation for the adverse action is not true.'" Id . (quoting Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir. 1995)). Rather, the plaintiff must prove that the proffered reason is false and that discrimination is the real reason for the adverse action. Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). Mere speculation by the plaintiff that the defendant had a discriminatory motive is not enough to withstand a motion for summary judgment. See Autry v. North Carolina Dep't of Human Resources, 820 F.2d 1384, 1386 (4th Cir. 1987); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241-46 (4th Cir. 1982). Even if there is a genuine issue of material fact on the first prong of this test, the defendant is entitled to summary judgment if the plaintiff cannot establish the second prong-- discrimination as the basis for the adverse action. See Gillins v. Berkeley Elec. Coop., Inc., 148 F.3d 413, 416-17 (4th Cir. 1998); Vaughan v. Metrahealth Cos., 145 F.3d 197, 201-02 (4th Cir. 1998).

IV.

After reviewing the evidence in the light most favorable to the Appellant, we find that Coates has made out a prima facie case of discrimination. Therefore, Virginia Power must produce and articulate a legitimate, non-discriminatory reason for its conduct. Virginia Power maintains that changes in the utilities market required it to alter its business and operations to ensure its success in future years. Virginia Power started a restructuring process called Vision 2000 to accomplish its goals. Vision 2000 required Virginia Power to eliminate hundreds of positions.

Having articulated a legitimate, non-discriminatory reason for its conduct, Virginia Power shifted the burden back onto Coates to show pretext. Coates adduced no evidence that indicates Virginia Power's explanation is a pretext for discriminatory conduct or was racially

5

motivated in any way. No evidence suggests that the approximately twenty managers selecting supervisors were aware of employees' race or even discussed race during their meetings. The evidence does show that Travis selected an African-American to work for him and that the Woodbridge District's new manager selected an African-American to work as a supervisor in the district. Furthermore, if Virginia Power's managers intended to preclude African-Americans from supervisory positions, the evidence demonstrates that they could have selected some of the Caucasian supervisors that were dismissed with Coates to fill positions held by African-Americans.

Although Coates contends he was better qualified than anyone selected for the Woodbridge positions, his self-assessment is irrelevant as a matter of law. "[W]e have repeatedly held that in a wrongful discharge action `it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" Hawkins, 203 F.3d at 280 (quoting DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted)). While Coates believes some of his appraisals were unfair, "we do not sit to appraise [the supervisor's] appraisal" of Coates. Id. Instead, "`[o]ur sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory.'" Id. (quoting DeJarnette, 133 F.3d at 299). Throughout his arguments, Coates merely speculates that Virginia Power's legitimate, non-discriminatory reason for its conduct is actually a pretext for discrimination.

For us to reverse the district court's decision, Coates would need to present some legally sufficient evidence of discrimination, not conjecture or speculation. If we were to require less in this case, "supervisors . . . could not evaluate employees of a different race without the prospect of a lawsuit." Id. at 282. We therefore affirm the district court's decision to grant Virginia Power's motion for summary judgment.

AFFIRMED

6