**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-2285**

---

TRUDY BENSON,

             Plaintiff - Appellee,

and

LYNN MIMS,

             Plaintiff,

        v.

THOMPSON CADILLAC-OLDSMOBILE, INC.,

             Defendant - Appellant.

---

**No. 06-2325**

---

TRUDY BENSON,

             Plaintiff - Appellant,

and

LYNN MIMS,

             Plaintiff,

        v.

THOMPSON CADILLAC-OLDSMOBILE, INC.,

             Defendant - Appellee.

Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (5:04-cv-00237-F)

Argued: May 14, 2008                    Decided: July 23, 2008

Before WILKINSON and KING, Circuit Judges, and Jackson L. KISER, Senior United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Lyn Karen Broom, TEAGUE, ROTENSTREICH, STANALAND, FOX & HOLT, LLP, Greensboro, North Carolina, for Thompson Cadillac-Oldsmobile, Inc. Anthony Mark Brannon, HAIRSTON, LANE, BRANNON, PLLC, Raleigh, North Carolina, for Trudy Benson. **ON BRIEF:** Paul A. Daniels, TEAGUE, ROTENSTREICH, STANALAND, FOX & HOLT, LLP, Greensboro, North Carolina, for Thompson Cadillac-Oldsmobile, Inc. James E. Hairston, HAIRSTON, LANE, BRANNON, PLLC, Raleigh, North Carolina, for Trudy Benson.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant Thompson Cadillac-Oldsmobile, Inc. ("TCO") appeals from an adverse judgment, entered after a jury trial conducted in the Eastern District of North Carolina, in favor of plaintiff Trudy Benson on a hostile work environment claim pursued under Title VII of the Civil Rights Act of 1964.[1] In particular, TCO contends that the district court erred in (1) denying its motion for judgment as a matter of law; (2) awarding back pay; and (3) awarding attorneys' fees. See Benson v. Thompson Cadillac-Oldsmobile, Inc., No. 5:04-cv-00237-F (E.D.N.C. July 18, 2006) (denying TCO's motion for judgment as matter of law, granting Benson's motion for back pay, and denying her motion for front pay) (the "Order"); Benson v. Thompson Cadillac-Oldsmobile, Inc., No. 5:04-cv-00237-F (E.D.N.C. Oct. 31, 2006) (awarding attorneys' fees and calculating back pay award) (the "Award").[2] Benson has cross-appealed, contending that the court erred in declining to award front pay. As explained below, we are satisfied that the district court properly resolved these contentions, and thus affirm on the reasoning of its Order and Award.

_____

[1] The district court awarded summary judgment to TCO on claims asserted by a second plaintiff, Lynn Mims, who has not appealed.

[2] The Order is found at J.A. 1353-90, and the Award is found at J.A. 1502-18. (Citations to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

3

I.

A.

Benson was employed by TCO, an automobile dealership in Raleigh, North Carolina, from approximately March 15, 2001, until April 1, 2003, after having worked as a mortgage lender for sixteen years at a bank located near the dealership.[3] Benson was first hired by TCO as a sales staff member and later promoted to Finance and Insurance ("F&I") manager. When Benson was hired in the sales department, she was the only female employed in such a position at TCO. Benson excelled in her sales position and, on April 15, 2002, became the first female F&I manager at TCO.

Despite her success at TCO, Benson had a difficult relationship with certain of her co-workers — specifically Dallas Britt, another F&I manager, and Wes Smith, the sales manager. As explained more fully in the Order, Britt exhibited a bad attitude toward women in the workplace — exemplified by his habit of referring to women in authority as "bitches." Britt also indicated to Benson that he opposed her promotion to F&I manager and would have preferred that a former male employee be hired for the position. Although equal to Benson in terms of authority, Britt threatened to fire Benson and told her that he was responsible for

_____

[3] We view the trial evidence in the light most favorable to Benson, as the prevailing party, and draw all reasonable inferences in her favor. A Helping Hand, LLC v. Balt. County, 515 F.3d 356, 365 (4th Cir. 2008).

4

personnel decisions at TCO. Benson said that Britt prevented her from receiving important training during her transition to the F&I department and had demonstrated a pattern of blaming her for his errors.

Similarly, Smith, TCO's sales manager, attempted to exercise supervisory authority over Benson several times a week, despite the fact that he and Benson were considered as equals within TCO's corporate structure. Benson demonstrated at trial that Smith had humiliated her in front of a long-time customer and told her, on another occasion, that she was fired. Benson explained that, although Smith was rude to everyone at TCO, his behavior was worse toward its few female employees.

Although Benson did not complain to TCO management after every hostile incident, she did bring her problems with Britt and Smith to the attention of TCO's management on several occasions. For example, Benson testified that

> I did talk to Mr. Campbell[, TCO's general manager,] on occasions and Mr. Campbell would redirect my attention to his focus for my future at Thompson. He would always say to me, Trudy, why do you let these guys get to you? You know, you've got a future here. I see you being — moving on up to a sales manager. One day you may even have my job. Don't . . . listen to them. He said they're envious of you, you've already accomplished more than they'll ever accomplish.

J.A. 506. Benson also testified that she had complained to Campbell that "you've got a boys club," a report that offended Campbell. Id. at 519. Benson believes that this complaint to

Campbell "started leading to my termination." Id. Benson further testified that "when I went to [Campbell] one day, he said Trudy, you don't want to be known as someone who can't get along with their peers. So, I thought, okay, I'll handle it on my own. And I tried . . . but it got worse and worse." Id. at 520. At some point Benson ceased complaining to Campbell, especially regarding her problems with Britt. This was so because Benson found out that Britt and Campbell were partners in an outside business venture and knew that they were close friends. Benson also testified that she brought her concerns to the attention of Hank Thompson, one of TCO's owners, after a particularly upsetting incident with Smith.

On April 1, 2003, Campbell informed Benson that he had to terminate her employment with TCO because she was not working out as an F&I manager and because of a straw purchase deal that Benson allegedly approved. Campbell explained that TCO was concerned about the straw purchase and its potential effect on TCO's primary lender. Benson testified that she was shocked by her termination and that she had no knowledge of the nature of the straw purchase.

B.

On July 7, 2003, Benson filed a charge against TCO with the Equal Employment Opportunity Commission (the "EEOC"), alleging, inter alia, sex discrimination. On November 21, 2003, the EEOC notified Benson of her right to sue TCO. On February 23, 2004, Benson filed a complaint against TCO in the Superior Court of Wake

6

County, North Carolina, and TCO removed the case to the Eastern District of North Carolina on April 6, 2004. With the district court's permission, Benson filed an amended complaint on October 29, 2004, alleging that TCO's treatment of her violated Title VII. Specifically, Benson alleged that by "engaging in the discriminatory acts, practices and conduct described above, TCO has condoned and/or failed to prevent the maintenance of a sexually . . . hostile work environment, discriminated against the Plaintiff in the terms and/or conditions of her employment on the basis of her sex . . . and retaliated against [her] for complaining about the discrimination practiced by TCO." J.A. 37.

TCO moved for summary judgment on December 7, 2005. While the motion was pending, TCO also moved to dismiss Benson's Title VII claims on the basis of certain discovery violations. On March 16, 2006, the district court denied TCO's summary judgment motion and its motion to dismiss. See Mims v. Thompson Cadillac-Oldsmobile, Inc., No. 5:04-cv-00237-F (E.D.N.C. Mar. 16, 2006) (the "Pretrial Order").[4] However, the court barred Benson "from introducing any information [at trial] that was not revealed during the course of discovery." Pretrial Order 26. The matter proceeded to a jury trial in April 2006.

At the conclusion of Benson's trial evidence, TCO moved, pursuant to Federal Rule of Civil Procedure 50, for judgment as a

---

[4] The Pretrial Order is found at J.A. 328-354.

matter of law.  The district court granted the motion with respect to Benson's request for punitive damages, but reserved ruling on the balance of the motion until the close of all the evidence. When TCO renewed its motion for judgment as a matter of law at the close of the evidence, the court denied the motion.  The jury thereafter returned a verdict in favor of Benson, awarding $100,000 in compensatory damages on her sexually hostile work environment claim.[5]  The trial court entered judgment accordingly, requested the parties to submit briefs regarding TCO's renewed post-trial motion for judgment as a matter of law, and requested a brief from Benson regarding back pay.  Benson thereafter moved for back pay, front pay, and interest.  TCO submitted another motion and memorandum on the issue of judgment as a matter of law, by which it also requested, in the alternative, a remittitur or a new trial.[6]

On July 18, 2006, the district court entered its Order — denying TCO's motion for judgment as a matter of law, but granting a remittitur of the compensatory damages award to $50,000.  By the

_____

[5]  Because Benson, by way of her pretrial submissions and proposed jury instructions, led the district court to believe that she was pursuing only her sexually hostile work environment claim, the court declined to submit her claims of sexually discriminatory discharge and retaliation to the jury.

[6]  Although TCO referred to its post-trial motion as a motion for judgment notwithstanding the verdict, we use the terminology of the present Rule 50 — as used by the district court in its Order — and refer to the post-trial motion as one for judgment as a matter of law.

Order, the court also granted Benson's motion for back pay and denied her motion for front pay. The Order directed Benson to file a response to the remittitur ruling and requested documentation regarding earnings in order to make a calculation of back pay. Benson accepted the remittitur on July 21, 2006, and the court issued the Award on October 31, 2006, awarding Benson $111,148.76 in back pay, $60,417.25 in attorneys' fees, plus pre-judgment interest on her back pay award, and post-judgment interest on the compensatory damages award.

Final judgment was entered on November 1, 2006. Benson has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

### A.

On appeal, TCO first contends that the district court erred in denying its motion for judgment as a matter of law because Benson had presented insufficient evidence for a reasonable jury to find in her favor on the sexually hostile work environment claim. We review de novo a district court's ruling on a Rule 50 motion for judgment as a matter of law. ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co., 472 F.3d 99, 113 (4th Cir. 2006). "Pursuant to Rule 50, the issue for assessment on appeal is whether there was a legally sufficient evidentiary basis for a reasonable jury, viewing

9

the evidence in the light most favorable to the prevailing party, to find for that party." Id. Judgment as a matter of law is warranted only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party on that issue." DeJarnette v. Corning Inc., 133 F.3d 293, 297 (4th Cir. 1998) (internal quotation marks omitted).

In order to establish her Title VII claim for a hostile work environment, Benson was obligated to show (1) that she was the recipient of unwelcome conduct; (2) that such conduct was based on her gender; (3) that it was sufficiently severe or pervasive to alter her conditions of employment and created an abusive work environment; and (4) that the conduct was imputable to TCO. Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000). By its Order, the district court ruled that Benson had presented sufficient evidence of her hostile work environment claim. First, the court recognized that Benson had made complaints to Campbell and others, and that "[b]ased upon her testimony, the jury was presented with sufficient evidence from which it could conclude that Plaintiff Benson did not welcome her treatment from Smith and Britt." Order 14. Second, the court determined that Benson had presented sufficient evidence that the unwelcome conduct was premised on her gender, concluding that Britt's derogatory comments about women in authority, his comments to Benson about her promotion to F&I manager, and other conduct, "viewed in light of

10

[Britt's] apparent hostility towards women, supports the jury's determination that she was subjected to hostile conduct that was predicated on her gender." Id. at 15. Next, the court determined that Benson had established that she had been subjected to severe and pervasive harassment. Specifically, the court concluded that, under the evidence,

> such conduct occurred frequently throughout her tenure as F&I Manager, [and] this court cannot allow Defendant TCO's motion on the basis that Plaintiff was only subjected to isolated incidents of offensive behavior. Rather, based on Plaintiff's general testimony there was sufficient evidence from which the jury could conclude that Plaintiff was subjected to frequent, humiliating conduct which interfered with her work performance.

Id. at 17-18. Finally, in assessing the evidence regarding Benson's complaints to Campbell and Thompson, the court concluded that Benson had "introduced sufficient evidence from which the jury could find that TCO had actual or constructive knowledge of the hostile work environment." Id. at 19.

Having carefully assessed the well-reasoned Order and the contentions of the parties in this appeal, we are satisfied that the district court did not err in sustaining the jury award (as remitted). See Order 11-19.

B.

TCO next contends that the district court erred in making an award of back pay to Benson, arguing that she failed to mitigate damages and that the back pay award exceeded the calculations Benson provided in discovery. We review a district court's

11

rulings concerning a back pay award for abuse of discretion. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 651 (4th Cir. 2002).

Benson requested a back pay award in the sum of $140,000, based on her approximate annual salary of $70,000 for a two-year period. In its Order, the court rejected TCO's contention that Benson should be denied back pay because of her failure to mitigate damages, observing that TCO, as the employer, bore the burden of proving a failure to mitigate. Order 31 (citing Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995)). The court recognized that "from April 21, 2003, until March 18, 2004, Plaintiff Benson submitted applications for approximately eighty-two separate positions," including F&I manager positions at automobile dealerships, as well as positions at banks, restaurants, and retail businesses. Id. at 32. The court concluded that, "[g]iven Plaintiff's numerous job applications to a variety of employers, the court cannot conclude that Plaintiff's efforts were insufficient to mitigate damages." Id.

The district court also rejected TCO's contention that the Pretrial Order — barring Benson from introducing any evidence that was not revealed during discovery — precluded an award of back pay. Concluding that TCO was using the Pretrial Order as "a sword, not a shield," the court observed that it had previously denied TCO's motion to strike Benson's claims for damages or, in the

12

alternative, to dismiss the complaint. Order 28-30. Relying on Supreme Court precedent, the court observed that, in Title VII actions, "'backpay should be denied for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered from past discrimination.'" Id. at 29 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)). The court then recognized that "'[t]o deny backpay because a particular cause has been prosecuted in an eccentric fashion, prejudicial to the other party, does not offend the broad purposes of Title VII.'" Id. (quoting Albemarle Paper, 422 U.S. at 424). Thus, the court granted Benson's request for back pay.

Although the district court made a back pay award, it directed Benson by its Order to file evidence of her earnings in 2005, and from January 2006 until April 18, 2006, for the purpose of determining the amount thereof. In its Award, the court reconsidered its request for such information, explaining that,

> [u]pon further reflection, the court is inclined to agree with [TCO]. Although the court does not agree that an award of backpay should be denied outright, the court does agree that [Benson] should not be able to rely upon information and documents that were not produced during discovery. Indeed, that is the essence of the court's [Pretrial Order] . . . whereby the court prohibited [Benson] from introducing any evidence at trial that was not produced during discovery. . . . Accordingly, [Benson] may only recover backpay for the time period for which she provided evidence of earnings at trial: April 1, 2003, until December 31, 2004.

13

Award 4.  As a result, the court calculated Benson's back pay award predicated on the period from April 1, 2003, to December 31, 2004, and awarded her back pay in the sum of $111,148.76.  Id. at 7.

After assessing the record and the contentions of the parties, we are satisfied that the back pay award should be affirmed on the careful reasoning of the district court.  See Order 25-34; Award 2-7.

C.

TCO's final contention on appeal is that the district court erred in granting Benson her an attorneys' fee award in the sum of $60,417.25.  We review an award of attorneys' fees for an abuse of discretion.  Smyth v. Rivero, 282 F.3d 268, 274 (4th Cir. 2002). In this regard, TCO first argues that, because the court should have overturned the jury verdict, its award of attorneys' fees should also be reversed.  Because we today sustain the jury verdict, see supra Part II.A, we readily reject this contention.

TCO also contends, however, that even if the evidence supported the verdict, the court nonetheless erred in making the award of attorneys' fees because the novelty of this case and the skill required to pursue it did not justify the time and labor expended by Benson's lawyers.  In particular, TCO takes exception to compensating two of Benson's lawyers to "sit at counsel table during the trial of this case," proposing instead significant

14

reductions in the reasonable time that should be compensated for those attorneys. Br. of Appellant 53.

In making the attorneys' fee award, the district court carefully examined, as it was obligated to do, several applicable factors. See Daly v. Hill, 790 F.2d 1071, 1075 n.2 (4th Cir. 1986) (outlining twelve factors which should guide court's discretion in calculating fee award, including time and labor required and novelty and difficulty of questions presented). In its Award, the district court carefully assessed the relevant aspects of the factors spelled out by our precedent. It thus determined the reasonable amount of time expended by the lawyers in handling the case, as well as the reasonable rates to be applied in making an award.

The Award also addressed TCO's contention that the number of plaintiff's attorneys involved, especially during the trial, was excessive and unreasonable. Explaining that Benson was represented by only one attorney in much of the litigation and that two additional lawyers entered appearances just before trial, the court "agree[d] with [TCO] that given the nature of the case, it is excessive to request attorneys' fees for three attorneys." Award 9. Concluding that one of Benson's lawyers played a "limited role" in the litigation, "almost exclusively related to the trial," the court disallowed the fees of one of her three lawyers. Id. In the course of its analysis, the court also reduced the number of

15

compensated hours for the other attorneys and reduced the hourly rate charged by one of them, finally arriving at a total award of $60,417.25.  Id. at 12-16.[7]

After a thorough review of the record and the Award, we are unable to disturb the district court's exercise of its discretion in this regard.  See Award 7-16.

D.

Finally, in her cross-appeal, Benson contends that the district court erred in declining to make an award of front pay. Benson asserts that she was fifty-nine years old at the time of judgment and would have worked at TCO until she was at least seventy (an additional eleven years), had she not been terminated for discriminatory reasons.  Accordingly, Benson requested front pay in the sum of $70,000 per year for eleven years.  As with back pay, we review a district court's rulings regarding front pay for an abuse of discretion.  See Dennis, 290 F.3d at 651.

In its Order, the district court declined to make an award of front pay to Benson, determining that such an award would be "unduly speculative."  Order 36.  The court concluded that "[n]o proof was submitted . . . as to Plaintiff Benson's work expectancy, the relative success of her business in 2005 or 2006, or the growth potential for business."  Id.  Due to the "utter lack of evidence"

_____

[7]  The Award reduced the fees requested by Benson from $89,970 to $60,417.25.

16

on the issue, the court thus denied Benson's request for front pay. Id.

We have carefully examined this issue as well, and we are also content to affirm the district court's front pay ruling in favor of TCO, as explained in the Order.  See Order 34-37.


## III.

Pursuant to the foregoing, we affirm on the basis of the district court's well-reasoned Order and Award.[8]

AFFIRMED

---

[8]  TCO also asserts on appeal that the district court abused its discretion in permitting Emanuel Joyner, one of Benson's witnesses, to testify.  After closely examining the record and the parties' assertions, we are also satisfied that this contention is without merit.